# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Margareth Saint-Surin, | Civ. No. 11-3333 (ADM/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| United States of America, | |
| Defendant. | |

Margareth Saint-Surin, #50798-053, FCI, P.O. Box 1731, Waseca, MN 56093, *pro se*.

Lonnie F. Bryan, Esq., Assistant United States Attorneys, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss or for Summary Judgment (Doc. No. 15). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Defendant's Motion to Dismiss for lack of subject-matter jurisdiction be granted.

## BACKGROUND

Plaintiff, a native of Haiti, is incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca") where she is serving a sentence for Conspiracy to Import Cocaine, in violation of 21 U.S.C. §§ 963 and

960(b)(2). She has a projected release date of July 15, 2014, but she is subject to an immigration detainer and removal proceeding.

Plaintiff brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(b)(1).[1] She claims that a prison employee wrongfully confiscated her hypertension medications and dentures and that, as a result, she suffered a stroke and a jaw infection.[2] Plaintiff seeks monetary damages of $150 million against Defendant United States.

### A. Plaintiff's Claim

The following constitutes the version of the facts presented by Plaintiff in her Complaint and supplemented in her response to Defendant's motion. She contends that on May 5 or 6, 2010, a law enforcement officer named Sabrina Reed, who was a corrections counselor at the prison, did a "shakedown" on Plaintiff's unit and seized Plaintiff's blood pressure medications and dentures "for no legitimate reason." (Doc. No. 23, Pl.'s Mot. Opposing Def.'s Mot. to Dismiss

---

[1] The FTCA requires that a plaintiff present an administrative claim and that the claim be denied before a complaint is filed in the District Court. 28 U.S.C. § 2675. The administrative claim must be filed within two years of when the action accrued and the complaint must be filed within six months of the agency's denial of the administrative claim. 28 U.S.C. § 2401(b). Defendant admits that Plaintiff exhausted the administrative claim process and timely filed her Complaint. (Doc. No. 16, Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") 2 n.2.)

[2] The Complaint alleges that the federal employee involved in the allegations in this case was acting within her employment. (Doc. No. 1, Compl. 4.) That federal employee is immune from tort liability and the United States is the proper and exclusive defendant under the FTCA. 28 U.S.C. § 2679(b)(1). Plaintiff has not sued the employee.

2

("Pl.'s Mot.") 1.)[3]  Plaintiff went to the prison's unit manager, who told Reed to return the medications. (*Id.*) Plaintiff then went to Reed's office, but Reed told Plaintiff "she would not return the medications, and that she would return the medications, but on her time, when she felt like it." (*Id.*) By the time Reed left for the day she had not returned the medications, so Plaintiff was not able to take the medications that day. (*Id.*) The next day Plaintiff went to work at her job in the prison food service facility. (*Id.* at 2.) "She felt dizzy, and had a severe headache, and she felt like her entire (R) side was getting paralized [sic], and this is when plaintiff fell and hit her head and back." (*Id.*) Plaintiff was taken to the hospital and diagnosed as having suffered a Transient Ischemic Attack ("TIA") (*Id.* at 2). According to Plaintiff, a TIA is defined as "a brief episode of cerebral ichemia [sic] that is usually charachterized [sic] by temporary blurring of vision, slurring of speech, numbness, paralysis, or syncope and that is often predictive of more serious cerebral accidents." (*Id.* at 3.) She also claims that as a result of the seizure of her dentures she suffered a gum infection. (Compl. 4.)

Plaintiff contends that she did not receive her blood pressure medications for three days after they were seized by Reed "and this has left [Plaintiff] with permanent damages for the rest of her life." (Pl.'s Mot. 3.) She also claims that the FCI Waseca staff failed to inform her about the TIA diagnosis when she

---

[3]  The Complaint states that the medications and dentures were taken by Reed on May 6, 2010. (Compl., Attach. 3.) But Plaintiff's response to Defendant's motion says that Reed took them on May 5, 2010. (Pl.'s Mot. 1.) This discrepancy makes no difference to this Court's recommendation to dismiss this case for lack of subject-matter jurisdiction.

returned to the prison from the hospital. (*Id.* at 2.) It was after she told her family that she felt like she was unable to walk, had constant shortness of breath, and significant weakness on her right side with severe headaches, that her family obtained the medical records that showed that she suffered "a stroke or TIA." (*Id.*) At that time, Plaintiff also found out she had high cholesterol, "which is a documented precursor to strokes, along with high blood pressure[.]" (*Id.*) Plaintiff contends that treatment for her "stroke" (i.e., TIA) should have included rehabilitation, which she did not receive. (*Id.* at 3.) And a physician did not prescribe medication for her high cholesterol until October 1, 2010. (*Id.* at 3–4.) Plaintiff does not say what happened to her dentures.

### B.     Defendant's Response

Defendant denies that any prison employee engaged in any tortious conduct. By way of background, Defendant acknowledges that prior to May 2010, the medical staff at FCI Waseca had prescribed hypertension medication for Plaintiff. (Def.'s Mem. 3.) And on May 5, 2010, a dentist provided Plaintiff an upper denture in connection with a tooth extraction. (*Id.*) But Reed, whose duties include conducting daily inspections of inmates' rooms to make sure that inmates have properly secured their property in lockers, denies taking a denture from Plaintiff's room and testifies that she does not recall confiscating any authorized medication from Plaintiff's room, explaining that she only "confiscates medication if it is expired and an inmate is no longer authorized to use it or possess it." (Doc. No. 18, Decl. of Sabrina Reed ("Reed Decl.") 3.)

4

According to a staff doctor at FCI Waseca, on May 7, 2010, when the medical staff responded to an emergency call from the Food Service Department, they found Plaintiff lying on the floor complaining of being dizzy and having a headache. (Doc. No. 19, Decl. of Sandra Laurig, M.D. ("Laurig Decl."), Attach. 1, EOP Health Services Clinical Encounter Report, May 7, 2010, at LAUR_00014.) In the emergency call, the food service employee reported that Plaintiff felt dizzy and had slumped to the floor; the employee reported that she had not fallen to the floor or hit her head. (*Id.*) Plaintiff reported to the medical staff that she had had a headache since the previous night, and that she had taken her medication at approximately 9:00 a.m. on the morning of the day of the incident. (*Id.*) Plaintiff's prescribed medications included blood pressure-hypertension medication. (*Id.* at LAUR_00019.) Plaintiff had slurred speech, some right-side weakness in hand and leg, and some facial drooping on the right side of her mouth. (*Id.* at LAUR_00014–15.) She was transferred to Immanuel St. Joseph's Hospital in Mankato where she was admitted. (Doc. No. 19, Laurig Decl. 2.)

Tests were run at the hospital including a CT scan of Plaintiff's brain, x-rays of chest and spine, an MRI, and an MR Angiography of her intracranial vasculature and an ultrasound. (*Id.*) A neurologist was consulted and he concluded as follows: "Functional right-side weakness. I find no objective neurologic abnormalities. Given her normal neuroimaging, I suspect all this is malingering. I have no concerns about her returning to prison at this time." (Doc.

5

No. 19, Laurig Decl., Attach. 2, Consultation Report at LAUR_00043.) Plaintiff was discharged from the hospital with a diagnosis of Transient Ischemic Attack (TIA) on May 8, 2010, and returned to the prison. (*Id.* at LAUR_00045.)

On May 10, 2010, Plaintiff saw a dentist at the prison, who prescribed an antibiotic for an infection stemming from the extraction of her tooth. (Doc. No. 20, Decl. of Samuel Petrie ("Petrie Decl.") 1.) The dentist also took impressions to build another denture because the first denture Plaintiff obtained on May 5, 2010, was lost. (*Id.*) Plaintiff reported that "she had left it on her bunk five days ago and, when she returned it was gone." (Doc. No. 20, Petrie Decl., Attach. 1, Dental Treatment Report at PET_00009.)

## DISCUSSION

### I.     Standard of Review

Defendant moves to dismiss the Complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Alternatively, Defendant moves for summary judgment. Since this Court concludes as a threshold issue that the Court does not have subject-matter jurisdiction, it does not reach the merits of Defendant's summary-judgment motion.

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.)). A district court has "broader power to decide its own right to hear the case than it has when the

6

merits of the case are reached." *Osborn*, 918 F.2d at 729 (citing *Williamson*, 645 F.2d at 413).

When considering a factual challenge to jurisdiction under Fed. R. Civ. P. 12(b)(1),

> [t]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Osborn*, 918 F.2d at 730 (*quoting Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Since no statutory format exists for this inquiry, "any rational mode of inquiry will do." *Osborn*, 918 F.2d at 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Here, the Court need not have to go beyond the claims made by Plaintiff. On their face, those claims establish that the Court lacks subject-matter jurisdiction.

## II. Analysis

The doctrine of sovereign immunity bars a plaintiff from suing the United States, unless Congress has expressly waived the Government's immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Manypenny v. United States*, 948 F.2d 1057, 1063 (8th Cir. 1991) ("It is undisputed that the United States, as a sovereign, cannot be sued without its consent."). If Plaintiff's claims are barred by sovereign immunity, then this case

7

must be summarily dismissed for lack of subject-matter jurisdiction. *See Meyer*, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006) ("Federal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity."); *Jones v. United States*, 255 F.3d 507, 511 (8th Cir. 2001) ("[I]t is axiomatic that because sovereign immunity implicates our subject matter jurisdiction, the issue may not be waived, and the government may raise it at any stage.").

In the FTCA, Congress waives the United States' sovereign immunity for claims arising out of torts committed by federal employees. *See* 28 U.S.C. § 1346(b)(1). The FTCA authorizes "claims against the United States for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." *Id.* However, the FTCA exempts from waiver certain categories of claims. *See id.* § 2680(a)-(n). Relevant here is the exception in subsection (c), which provides in relevant part that § 1346(b) (i.e., the waiver of sovereign immunity) shall not apply to "[a]ny claim arising in respect to the . . . detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." *Id.* § 2680(c). In other words, if Plaintiff's claim is based on the alleged detention of her property,

8

and if corrections counselor Sabrina Reed is a law enforcement officer, then the United States has not waived its sovereign immunity and this Court does not have subject-matter jurisdiction.

Plaintiff's claim is based on the alleged "detention" of her property. This conclusion is supported by the plain meaning of the word "detention," which is defined as "[c]ustody of property." *Black's Law Dictionary* 514 (9th ed. 2009). Plaintiff alleges that Reed took her medications and dentures, kept them in her custody, and refused to return them at least temporarily. These alleged acts constitute a "detention" within the plain meaning of the word.

This construction of the word "detention" is also supported by case law. The Ninth and Tenth Circuits have characterized the temporary taking or confiscation of inmate property as "detention" for purposes of § 2680(c), and have barred suits stemming from those actions. *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 807–08 (9th Cir. 2003) (temporary taking); *Myles v. United States*, 52 Fed. Appx. 108, 110 (10th Cir. 2002) (confiscation). Federal district courts have done likewise. *See McKinney v. United States*, No. 05–344–DRH, 2009 WL 249366, at *2 (S.D. Ill. Feb. 3, 2009) (concluding that "the BOP *detained* [plaintiff's] books when they confiscated them during [plaintiff's] move to Special Housing Unit and thus [plaintiff's] property claim is barred by 28 U.S.C. § 2680(c)") (emphasis added); *Corley v. United States*, No. 5:08cv177DCB-MTP, 2008 WL 5412422, at *4 (S.D. Miss. Dec. 23, 2008) (dismissing prisoner's FTCA claim for lack of subject-matter jurisdiction because BOP staff members were

9

"other law enforcement" officers who "*detained*" plaintiff's property under section 2680(c)) (emphasis added). The Eighth Circuit has not directly considered the meaning of "detention" in the context of actions by the BOP, but has held that when customs officers take temporary custody of property, that custody constitutes a "detention" for purposes of 2680(c). *Goodman v. United States*, 987 F.2d 550, 551 (8th Cir. 1993) ("We conclude . . . that 'detention' includes the routine customs inspection that occurred in this case.").

With regard to whether corrections counselor Reed is a "law enforcement officer," this Court finds that she is. The statutory definition of "law enforcement officer" includes federal employees whose duties include the "detention" of persons convicted of criminal offenses. 5 U.S.C. § 8331 (20). "Detention" of persons is defined by statute as including the duties of "employees of the Bureau of Prisons . . . ." *Id.* § 8331 (20)(A). Also, the Supreme Court has held that federal prison staff are law enforcement officers for purposes of § 2680(c). *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 216 (2008).[4] Thus, corrections counselor Reed is a "law enforcement officer."

Because Plaintiff's claim is based on detention of her property by a law enforcement officer, Defendant is immune from suit and this Court lacks subject-matter jurisdiction. Plaintiff's claim must therefore be dismissed.

---

[4] Plaintiff's herself also identifies Reed as a law enforcement officer. (Pl.'s Mot. ¶ 2.)

This holding is consistent with the precedents of the Supreme Court and other federal courts.  *See Ali*, 552 U.S. at 216 (concluding that the BOP was immune from suit by a prisoner who claimed that items of religious and nostalgic significance including a Qur'an were missing from property being transferred by prison officers from one prison to another); *Kosak v. United States*, 465 U.S. 848, 859 (1984) (interpreting the exemption in § 2680(c) broadly, observing "that a waiver of immunity from suits alleging damage to detained property would expose the United States to liability for fraudulent claims");  *Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 89 (D.D.C. 2011) (dismissing, for lack of subject-matter jurisdiction, plaintiff's FTCA claim of conversion of property allegedly stolen by law enforcement officers from plaintiff's van when it was in custody); *Johnson v. United States*, 642 F. Supp. 2d 1, 3 (D.D.C. 2009) (stating that § 2680(c) required dismissal, for lack of subject-matter jurisdiction, of claims that BOP confiscated and lost plaintiff's radio and other personal property).

Plaintiff also mentions without elaboration that the basis for federal court jurisdiction in this case is "negligence by federal employee, 8th Amendment violation." (Doc. No. 1, Compl. 3.)  Even if the Court assumes that the Complaint also asserts, in addition to the claim for damages under the FTCA, a claim for damages against the United States for a constitutional violation of the Eighth Amendment, there is no subject-matter jurisdiction.  The United States has not waived its sovereign immunity from suit for money damages arising out of constitutional violations.  *Hartje v. FTC,* 106 F.3d 1406, 1408 (8th Cir. 1997) ("A

*Bivens* action, which provides a cause of action for a constitutional violation, is only available against federal officers, not government entities."). The United States and government employees sued in their official capacities have sovereign immunity from such *Bivens* actions. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). Therefore, any claim against the United States for a constitutional violation of the Eighth Amendment should also be dismissed.

## RECOMMENDATION

Based upon the above, and upon all the records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss or for Summary Judgment (Doc. No. 15), be **GRANTED**;

2. Plaintiff's Motion Opposing Defendant's Motion to Dismiss or for Summary Judgment (Doc. No. 23), be **DENIED**; and

3. This case be **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

Date: October 22, 2012

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 5, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure

to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen** days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.